# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30190
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

September 27, 2017

Lyle W. Cayce
Clerk

CLAIMANT ID 100028922,

      Requesting Party–Appellant,

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

      Objecting Parties–Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-690

---

Before JOLLY, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

      This case comes to us from the Deepwater Horizon Economic & Property Damages Settlement Agreement (Settlement Agreement).  Claimant sought recovery under the Settlement Agreement, but the Claims Administrator denied the claim.  The Appeal Panel upheld the denial.  Claimant then sought discretionary review in the Eastern District of Louisiana, but the district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

denied review. Claimant has appealed that denial. Because the district court acted within its discretion when it declined to review Claimant's case, we affirm.

**I**

Since July 2008, Claimant has operated an extended-stay motel in Beaumont, Texas. Four years after the Deepwater Horizon oil spill, Claimant filed a Business Economic Loss Claim to the Court Supervised Settlement Program (Program) under the Settlement Agreement. Claimant sought recovery for spill-related business economic losses.

Under Exhibit B of the Settlement Agreement, a claimant may recover only for spill-related losses. Depending on a claimant's location, Exhibit 4B requires that certain claimants satisfy any one of three possible revenue tests: the v-shaped revenue test, the modified v-shaped revenue test, or the decline-only revenue test. Because of its location, Claimant had to satisfy one of these tests.

Each revenue test, at a minimum, compares the claimant's revenue during a pre-spill Benchmark Period to the claimant's revenue during particular post-spill periods. The claimant can satisfy either v-shaped revenue test by showing that its post-spill revenue decline and subsequent recovery followed one of two v-shaped patterns. If a claimant fails both v-shaped tests, it might still satisfy the decline-only test. That test requires demonstrating: (1) a post-spill revenue decrease of 15% or more compared to the Benchmark Period; (2) that factors outside a claimant's control prevented revenue recovery in 2011; and (3) that the claimant lost certain kinds of customers after the spill.

On initial review, the Claims Administrator determined that Claimant failed all three revenue tests and denied the claim. Claimant failed both v-shaped revenue tests, no matter which Benchmark Period it used.

Claimant also failed the decline-only test. Program accountants used the 2008–2009 Benchmark Period to find that Claimant satisfied the test's first step. They also concluded Claimant would not have satisfied the first step using the 2009-only Benchmark Period. Claimant did not, however, satisfy the test's second step, because it could not identify factors beyond its control that prevented revenue recovery in 2011. The accountants documented these results in the Accountant Calculation Schedules' Causation Results section, which Claimant could access. Concluding that Claimant failed all three possible revenue tests, the Claims Administrator denied the claim.

Claimant next sought re-review. During that process, Program accountants discovered a mistake in their earlier calculations. They found that Claimant could not use 2008 in its Benchmark Period. A claimant may include a particular year in the Benchmark Period only if the claimant operated its business for six months or more during that year. But Claimant provided accounting statements for only five months of 2008—August through December. When Program accountants asked Claimant for pre-August 2008 operating history, Claimant explained that it had no pre-August 2008 statements because August was its first full month of business. Accordingly, the accountants determined that the 2009-only Benchmark Period was the only eligible period. The accountants explained—both in a new note to the supporting schedules (Note 10) and on the Calculation Summary—that the 2008–2009 Benchmark Period was unavailable. Without the 2008–2009 Benchmark Period, Claimant no longer satisfied step one of the decline-only revenue test. The accountants failed to update the Causation Results section— it continued (erroneously) to conclude that Claimant satisfied the first step of the decline-only test and failed the second. After re-review, the Claims Administrator maintained that Claimant could not satisfy any of Exhibit 4B's revenue tests and denied the claim.

Following re-review, Claimant asked for reconsideration. Claimant's arguments during reconsideration focused only on the decline-only test's second step. Claimant provided no pre-August 2008 operating history and did not dispute that the 2008–2009 Benchmark Period was unavailable. Accordingly, the accountants continued to note that, without more documentation from Claimant, the 2008–2009 Benchmark Period remained unavailable. Again, they failed to update the Causation Results section to reflect that Claimant now failed—instead of passed—step one of the decline-only test. The Claims Administrator denied the claim after reconsideration.

Claimant brought the claim to the Appeal Panel. The Appeal Panel focused at first on the decline-only test's third step, and it asked the Claims Administrator to explain how Claimant had failed that step. In its Summary of Review, the Claims Administrator told the Appeal Panel that Program accountants did not analyze step three of the decline-only test because Claimant had so clearly failed step one. Satisfied with this explanation, the Appeal Panel denied the claim. The Appeal Panel regretted that the Program didn't better communicate to Claimant why it failed Exhibit 4B's causation requirements. But the Appeal Panel concluded that the Program's imperfect communication was also harmless because Claimant failed all revenue causation tests under the 2009-only Benchmark Period, the only period it was entitled to use.

After the Appeal Panel's decision, Claimant petitioned for discretionary review in the Eastern District of Louisiana, and the district court declined to review the appeal. Claimant now appeals the district court's decision.

## II

The district court has discretion to deny review of the Appeal Panel's decision, and we review the district court's decision for abuse of discretion.[1]

While we have not defined the exact limits of a district court's discretion to deny review,[2] we have said that a district court abuses its discretion when it denies review and one of the following factors exist: (1) the request for review raises an issue that has split the Appeal Panels and would substantially impact the Settlement Agreement's administration once resolved;[3] (2) the dispute concerns a pressing question about how to interpret the Settlement Agreement's rules;[4] or (3) the Appeal Panel misapplied or contradicted the Settlement Agreement, or had the clear potential to do so.[5]

We have also been careful not to transform discretionary review into mandatory review.[6] Accordingly, the district court need not review a claim that raises a non-pressing Settlement Agreement interpretation issue[7] or merely challenges "the correctness of a discretionary administrative decision in the facts of a single claimant's case."[8]

---

[1] *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (per curiam).

[2] *See id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*; *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016).

[6] *See, e.g.*, *Claimant ID 100212278*, 848 F.3d at 410; *In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015) ("We do not intend any part of this opinion to turn the district court's discretionary review into a mandatory review. To do so would frustrate the clear purpose of the Settlement Agreement to curtail litigation.").

[7] *Holmes Motors, Inc.*, 829 F.3d at 316.

[8] *Claimant ID 100212278*, 848 F.3d at 410 (quoting *In re Deepwater Horizon (Sexton)*, 641 F. App'x 405, 410 (5th Cir. 2016) (per curiam)).

## III

The district court did not abuse its discretion when it declined to review the Appeal Panel's decision, because Claimant has not shown that any of the abuse-of-discretion factors are present.

## A

First, Claimant's request for review does not raise an issue that has split the Appeal Panel and that would, once resolved, substantially impact the administration of the Settlement Agreement.

According to Claimant, the Appeal Panel split from two past Appeal Panel interpretations of the Settlement Agreement when it declined to remand the case back to the Claims Administrator. But the purported split doesn't exist, because the decisions that Claimant cites turn only on their facts.

In those decisions, the Claims Administrator had found that the claimants' documentation did not satisfy Exhibit 4B. In both cases, the Appeal Panel remanded the case to the Claims Administrator. In one case, the Appeal Panel decided to remand because the Claims Administrator never gave claimant notice about the specific documentation that the claimant lacked. The Appeal Panel chose to remand the other case because the Claims Administrator never gave the claimant a chance to provide the necessary documentation.

But in this case, the Program notified Claimant more than once about the documentation deficiency, and it gave Claimant several opportunities to provide the missing documentation. Claimant's first notice and opportunity to respond came nine months before the final Appeal Panel decision when the Program asked Claimant for evidence of pre-August 2008 operations. Claimant's attorney responded, explaining that pre-August 2008 operating history was unavailable. Claimant received additional notice and more opportunities to respond during the re-review and reconsideration process.

6

During both re-review and reconsideration, the Program's supporting documents (which Claimant could access) explained that the 2008–2009 Benchmark Period remained ineligible without pre-August 2008 operating history. There is no split: the Appeal Panels reached different decisions because they faced different facts.

Claimant's alleged split would also not concern an issue that "substantially impact[s] the administration of the Agreement."[9] Because review is discretionary, district courts are not required to review every potential Appeal Panel disagreement. Only those splits that would substantially impact the Settlement Agreement's administration merit review.[10] Claimant has not identified a split over a question so impactful that a district court must review it.

## B

This dispute does not concern a pressing question about how to interpret the Settlement Agreement's rules.

The parties disagree about facts, not Settlement Agreement interpretation. Neither party disputes which Settlement Agreement rules apply or what the rules provide. In fact, both parties agree that the Settlement Agreement requires that Claims Administrators provide claimants with notice and opportunities to be heard. Instead, Claimant and BP disagree about whether the Program gave Claimant (1) notice that the 2008–2009 Benchmark Period was ineligible and (2) an opportunity to respond. Those are not questions about how the Settlement Agreement should be interpreted or implemented, they are questions about what happened during the process.

---

[9] *Claimant ID 100212278*, 848 F.3d at 410 (quoting *In re Deepwater Horizon (Smith)*, 632 F. App'x. 199, 203-04 (5th Cir. 2015) (per curiam)).

[10] *See Claimant ID 100212278*, 848 F.3d at 410.

Even if the Appeal Panel had interpreted the Settlement Agreement's notice requirements, that still would not present a pressing interpretive question. We do not ask district courts to review every claim that poses an interpretive issue. We require review only when the Appeal Panel's decision involves a non-isolated or substantial error of interpretation.[11] This Appeal Panel decision does not contain a non-isolated or substantial error of interpretation.

## C

Finally, the Appeal Panel's decision did not misapply or contradict the Settlement Agreement, nor did it have the clear potential to do so.

We consider not whether there is a disagreement about what the Settlement Agreement means, but instead whether the Appeal Panel erred in applying it. Nor do we ask district courts to consider every claim that involves a possible misapplication or contradiction. We instead require review only if the Appeal Panel's decision was "incongruent with the language of the Settlement Agreement."[12] We cannot say that the Appeal Panel acted incongruently with the Settlement Agreement when it concluded that Claimant received all the notice that the Settlement Agreement requires.

\*       \*       \*

Claimant's request for review raises none of the abuse-of-discretion factors. Thus, the district court acted within its discretion when it denied Claimant's request. On that basis, we AFFIRM the district court's decision.

---

[11] *See id.*

[12] *Claimant ID 100250022 v. BP Expl. & Prod., Inc.*, 847 F.3d 167, 170 (5th Cir. 2017) (per curiam).